UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| TYRONNE C. SUTHERLAND | * | CIVIL ACTION NO. 19-10773 |
|---|---|---|
| | * | |
| VERSUS | * | DIVISION: 1 |
| | * | |
| | * | MAGISTRATE JUDGE |
| ORLEANS PARISH SHERIFF'S OFFICE, ET AL. | * | JANIS VAN MEERVELD |

<u>ORDER AND REASONS</u>

Before the Court is the Motion to Dismiss filed by the Orleans Parish Sheriff's Office ("OPSO"), Marlin N. Gusman, Sheriff of the Parish of Orleans (the "Sheriff"), Johnette Staes, Scott Colvin, and Cathy Taylor. (Rec. Doc. 21). For the following reasons, the Motion is GRANTED in part and DENIED in part.

<u>Background</u>

Plaintiff Tyronne C. Sutherland was employed in the Food Service Division of OPSO for 28 years until he was allegedly forced into retirement in June 2017. Sutherland alleges that Captain Taylor, a female supervisor, created an environment that encouraged and fostered a hostile work environment for Sutherland and other male employees due to their gender. He alleges that male employees were subjected to a stricter level of scrutiny than female employees in similar situations. For example, he alleges that male employees were repeatedly written up, reprimanded, and disciplined for relatively minor mistakes. He alleges that he was required to carry out these disciplinary actions over his objection and was threatened with discipline himself if he did not do so. Yet, he alleges, the same behavior from female employees went "largely ignored even when discovered." For example, he alleges that certain female deputies reported late for duty consistently, but Captain Taylor refused to take any disciplinary action when she was made aware

1

of the situation. He alleges that Deputy Andrea Baker resigned because of the favoritism after receiving an unwarranted write up. He alleges that Deputy Bobby Randle was written up for the same infraction. He adds that Deputy Tarius Smith resigned because he was also frustrated with the discrimination being displayed by Captain Taylor. Sutherland alleges that Captain Taylor told him that they did not really need male security deputies working the Food Service Division. He alleges he expressed his concerns to the defendants via formal complaint on several occasions, but the defendants failed to take any action. Instead, he alleges, he was forced to choose between early retirement or a transfer with a reduction in salary. As a result of transfer and pay reduction of $300 per pay period, he alleges he was compelled to accept early retirement after 28 years of service, two years short of the maximum retirement benefits.

He filed a Charge of Gender Discrimination on June 14, 2017 with the Equal Employment Opportunity Commission alleging gender discrimination. A Notice of Right to Sue Letter was issued on March 7, 2019. He filed this lawsuit *pro se* on May 28, 2019 naming Gary Maynard, OPSO, the Sheriff, Staes, Colvin, and Taylor as defendants. The court granted his request for appointment counsel, and court appointed counsel enrolled on November 13, 2019.

Maynard appeared and filed a motion to dismiss. Sutherland consented to the dismissal and Maynard has been dismissed with prejudice. Presently before the court is the Motion to Dismiss filed by OPSO, the Sheriff, Staes, Colvin, and Taylor.

<u>Law and Analysis</u>

1. *Standard for Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Cuvillier v. Taylor</u>, 503 F.3d 397, 401 (5th Cir.

2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

2. *Unopposed Issues*

In his response memorandum, Sutherland represents that he does not oppose the motion to dismiss the following claims

- All claims against OPSO.

- All claims against Staes, Colvin, and Taylor.

- Sutherland's claims under 42 U.S.C. §1981.

- Any complaints of race discrimination or retaliation for race discrimination under Title VII.

3

Accordingly, as to these claims, the defendants' motion is GRANTED. The sole remaining defendant is the Sheriff.

   3. *Title VII Retaliation*

Under Title VII, it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action." Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). The adverse employment action must "have been materially adverse to a reasonable employee." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). In the context of a retaliation claim, an action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Defendants argue that Sutherland has failed to plead facts that would establish an adverse employment action. They submit that Sutherland does not allege he was terminated, disciplined, or that his termination was threatened as a result of his report against Captain Taylor. They argue that Sutherland does not allege he was demoted or threatened that he would lose his rank as a Lieutenant. They insist that his allegedly "forced" retirement is not an adverse employment action because he cannot establish that it qualifies as a constructive discharge. Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) ("A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation, only if the resignation qualifies as a constructive discharge.").

4

In opposition, Sutherland insists that his Complaint states a claim for retaliation. First, he submits that he has plead that he made a complaint against Captain Taylor for gender discrimination, which is a protected activity under Title VII. Next, he submits that he has plead that because of that complaint, he was transferred to a new position with a $300 reduction in pay per pay period. He submits that he has alleged that he retired early because of the reduction in pay, which he argues was a materially adverse employment action that would have dissuaded him from making or supporting a charge of discrimination. Sutherland argues that at the motion to dismiss stage, he is not required to make out a *prima facie* case of retaliation. See Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013) (noting in a case where the plaintiff alleged disparate treatment that "a plaintiff need not make out a *prima facie* case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim"). He insists he has plead sufficient facts to allow the court to draw the reasonable inference that the Sheriff is liable for the discriminatory retaliation alleged. In the alternative, Sutherland requests leave to amend his Complaint.

The court agrees with Sutherland that the facts alleged in his Complaint are sufficient to state a plausible claim for retaliation. Defendants claim only that Sutherland has failed to plead an adverse employment action. But they fail to recognize that Sutherland has alleged that as a result of making a gender discrimination complaint, he was transferred from a position he had held for 28 years to a new position with a pay reduction of $300 per pay period. The court finds that the transfer and reduction in pay might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. In this case, Sutherland alleges that the transfer compelled him to retire early. Viewing the facts alleged in the light most favorable to Sutherland, the court finds that he has stated a plausible claim for retaliation under Title VII.

*4. Title VII Gender Discrimination*

Although defendants did not move to dismiss Sutherland's claims for gender discrimination against the Sheriff, Sutherland addresses these claims in his opposition by insisting that he has stated a claim for gender discrimination and requesting that, in the alternative, he be allowed to amend his complaint. Defendants have not filed a reply memorandum to address this argument. Because defendants have not sought dismissal of Sutherland's gender discrimination claims, whether such claims satisfy the Rule 12(b)(6) standard is not presently before the court. To the extent Sutherland seeks to amend his complaint, he may request that relief pursuant to Rule 15.

*5. Louisiana Discrimination Law Claims*

In seeking dismissal of Sutherland's claims against the individual defendants, defendants note that the Complaint contains no direct allegations under the Louisiana Employment Discrimination Law. They nonetheless requested dismissal of Sutherland's Title VII and, out of an abundance of caution, his Louisiana Employment Discrimination Law claims against the individual defendants. As noted above, Sutherland did not oppose dismissal of his claims against Staes, Colvin, and Taylor. Nonetheless, in opposition, Sutherland concedes he has not invoked Louisiana law, and requests leave to file a first amended complaint—apparently to allege a claim under Louisiana's Employment Discrimination Law related to his remaining claims of retaliation and gender discrimination against the Sheriff. To the extent Sutherland seeks such relief, he must do so via a separate motion pursuant to Rule 15.

6. *Appointment of Compliance Director – Is Sheriff Gusman a Proper Defendant?*

Defendants raise one final issue. They argue that even if Sutherland has stated a claim against the Sheriff, the Sheriff must nonetheless be dismissed because the challenged conduct occurred while a court appointed compliance director was in charge of the Sheriff's Office.

On June 6, 2013, Eastern District of Louisiana Judge Africk approved a Consent Judgment that requires Sheriff Gusman "to implement systemic and durable reforms to address pervasive and longstanding problems at the Orleans Parish jail facilities." Jones v. Gusman, No. 12-cv-859, ECF # 1082 (E.D. La. Jun. 21, 2016); Jones, No. 12-cv-859, ECF # 466 (E.D. La. June 6, 2013). In June 2016, Judge Africk issued the Stipulated Order for Appointment of Independent Jail Compliance Director. Jones, No. 12-cv-859, ECF # 1082 (E.D. La. Jun. 21, 2016). On September 15, 2016, Judge Africk approved the appointment of Gary Maynard as the Compliance Director. Jones, No. 12-cv-859, ECF # 1097 (E.D. La. Sept. 15, 2016).

Defendants here argue that pursuant to the Stipulated Order, the Compliance Director has final authority at the Orleans Parish Sheriff's Office with respect to all jail operations including staff reassignments and transfers like that complained of by plaintiff Sutherland. They argue that courts have held that the Compliance Director is the functional equivalent of a court-appointed receiver, entitled to derivative judicial immunity. They argue that Sheriff Gusman could not make any decision concerning terminations or transfers at the time of the actions complained of by Sutherland. Thus, they insist, Sutherland's employment discrimination complaint against the Sheriff must be dismissed.

Sutherland opposes, arguing that the Stipulated Order does not dispose of the Sheriff's duties as Sutherland's employer. He points out that the Stipulated Order and Consent Judgment concerned the rights of prisoners. He argues that his gender discrimination claims bear no

relationship to the conditions that the Compliance Director was appointed to remedy. He insists that Sheriff Gusman's liability as Sutherland's employer under Title VII and Louisiana Employment Discrimination Law remains.

The court notes that the immunity of the Compliance Director is not an issue presently before the Court.[1] Sutherland consented to the dismissal of Compliance Director Maynard. Defendants' citation to cases holding that, on the facts before them, the Compliance Director was immune from suit do not bear on whether *the Sheriff*, in his official capacity, may be liable under Title VII for the claims alleged by Sutherland.

Defendants also cite a case from the District of Massachusetts, where the court dismissed the plaintiff's 42 U.S.C. §1983 claims against the City of Chelsea, finding that even if the city's municipal officials were involved in the alleged First Amendment retaliation against the plaintiff "it appears that they would have been powerless to act, since their authority to do so had been taken by the legislature and delegated to [the City Receiver] through the Receivership Act." Canney v. City of Chelsea, 925 F. Supp. 58, 68 (D. Mass. 1996). This case is of limited use in determining the Sheriff's liability here. First, a different authorizing statute/order was at play. And, importantly, the court's conclusion was made in the context of the court's consideration of whether plaintiff had established a custom or policy under Monell v. Department of Social Services, a

---

[1] The question of immunity is case specific, as the Jones court concluded when the Compliance Director sought a blanket order of immunity. Jones v. Gusman, No. CV 12-0859, 2018 WL 4972767, at *2-3 (E.D. La. Sept. 28, 2018), report and recommendation adopted, No. CV 12-859, 2018 WL 4964235 (E.D. La. Oct. 15, 2018). Courts in this district have found the Compliance Director immune in a number of cases. Short v. Gusman, No. CV 18-3174, 2019 WL 1326645, at *3 (E.D. La. Mar. 25, 2019); Crawford v. Gusman, No. CV 17-13397, 2018 WL 3773407, at *3 (E.D. La. Aug. 9, 2018); Henry v. Gusman, No. CV 18-4661, 2018 WL 8053773, at *5 (E.D. La. Dec. 12, 2018), report and recommendation adopted, No. CV 18-4661, 2019 WL 1670717 (E.D. La. Apr. 17, 2019). But there are likely cases to which immunity would not extend. See, e.g., Med. Dev. Int'l v. California Dep't of Corr. & Rehab., 585 F.3d 1211, 1213 (9th Cir. 2009) (holding a receiver appointed to operate prisons in California was not immune in his official capacity from a lawsuit by a service provider that alleged it had not received full payment for its services).

requirement to establish liability against a municipality under §1983. Id. at 66-68. This is not a §1983 action.

Here, the question of whether the Sheriff may be liable in his official capacity under Title VII turns on whether he is an "employer." Under Title VII, an employer "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). A person "includes one or more individuals, governments, governmental agencies, political subdivisions . . . trustees, trustees in cases under Title 11, or receivers."[2] Id. In considering whether a sheriff was an employer for purposes of a Title VII action, the Fifth Circuit has noted that although federal law controls the question, "courts can look to state law to understand the nature of the employment relationship." Oden v. Oktibbeha Cty., Miss., 246 F.3d 458, 465 (5th Cir. 2001). In Oden, the court of appeals determined that under Mississippi law, a sheriff is allowed to "appoint, remove, and fix the compensation of his deputies, subject to the county board of supervisor's approval of the sheriff's budget." Id. The court concluded that because the sheriff "was the elected official who made all decisions concerning promotions within the Sheriff's Department, he was [plaintiff's] employer for purposes of Title VII." Id. Similarly, a court in this district has found that under Louisiana law, a sheriff had "the exclusive power to appoint, remove, and to fix the compensation and duties of sheriff's deputies." Smith v. Par. of Washington, 318 F. Supp. 2d 366, 379 (E.D. La. 2004). Upon election of a new sheriff, all deputies had to be reappointed and as appointees, the deputy sheriffs served at the pleasure of the sheriff. Id. Thus, the court found that the sheriff in question "qualifies as an employer for Title VII purposes." Id.

---

[2] Note that "receivers" are specifically included as a "person," suggesting that even a court appointed receiver might have liability for Title VII violations to the extent the person otherwise satisfies the definition of employer.

An entity may also be liable under Title VII as a joint employer. In determining whether an entity is liable as a joint employer, courts consider "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Skidmore v. Precision Printing & Pkg., Inc., 188 F.3d 606, 616–17 (5th Cir. 1999) (quoting Trevino v. Celanese Corp., 701 F.2d 397, 404 (5th Cir. 1983)). The Fifth Circuit has explained that the most important question is usually "which entity made the final decisions regarding employment matters relating to the person claiming discrimination?" Id. "[F]or a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." Whitaker v. Milwaukee Cty., Wisconsin, 772 F.3d 802, 810 (7th Cir. 2014) (quoting Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr., 536 F.3d 640, 644 (7th Cir. 2008)).

While the parties do not appear to dispute that the Sheriff would typically be the "employer" for the purposes of Sutherland's claim, the appointment of the Compliance Director calls into question whether, during the acts alleged in Sutherland's lawsuit, the Sheriff retained authority over employment matters concerning Sutherland, including his transfer and the handling of his gender discrimination complaints. According to its terms, the purpose of the Consent Judgment is to address the constitutional violations alleged in the matter and to "ensure that the conditions in [the Orleans Parish Prison] protect the constitutional rights of prisoners confined there." Jones, No. 12-cv-859, ECF # 466, at 5 (E.D. La. June 6, 2013). It includes sections on "protection from harm," "mental health care," "medical care," "sanitation and environmental conditions," "fire and life safety," "language assistance," and "youthful prisoners." Id. at 2-3.

As noted above, the Stipulated Order provides for the appointment of a Compliance Director. Its Section D lists the duties and authority of the Compliance Director. The Compliance Director has "final authority to operate the Orleans Parish Jail . . . and all jail facilities . . . and is charged with doing so in a manner to achieve substantial compliance with each provision of the Consent Judgment . . . ." Jones, No. 12-cv-859, ECF # 1082, at 2 (E.D. La. Jun. 21, 2016). The Compliance Director is required to "seek advice and/or approval from the Sheriff regarding all decisions that materially impact compliance with the Consent Judgment." Id. at 3. The Compliance Director was required to enter into the court record an initial remediation action plan (the "Plan"), with the approval of the Sheriff. Id. at 5. The Plan was required to address "the deficiencies that led to noncompliance and explain how the Plan will facilitate sustainable compliance with the Consent Judgment within one year of the appointment of the Compliance Director." Id. Paragraph 14 of Section D provides that "[t]he Compliance Director will have the final authority to review, investigate, and take corrective action regarding OPSO policies, procedures, and practices that are related to the Consent Judgment." Id. at 12. Paragraph 15 provides that:

> The Compliance Director will have final authority to create, modify, abolish or transfer employee and contractor positions; *to recruit, hire, discipline, terminate, promote, demote, transfer, and evaluate employees and contractors* and will recommend increased compensation for staff to the extent necessary to obtain compliance with this Court's orders, the cost of such activity to be included in the Compliance Director's Jail Budget.

Id. (emphasis added).

It is clear from the Stipulated Order that the Compliance Director is tasked with implementing the Consent Judgment, which is itself focused on prisoner safety. There does not appear to be any indication in the Stipulated Order or the Consent Judgment that employment discrimination was an issue that the Compliance Director was explicitly tasked with managing.

11

There is certainly no indication that by the appointment of a Compliance Director, the court intended to eviscerate the rights of OPSO employees against the Sheriff under Title VII. Yet, the Compliance Director was given final authority to terminate, transfer, and evaluate employees. Despite Sutherland's suggestion that this power is limited "to the extent necessary to obtain compliance with this Court's orders," it appears this clause of Paragraph 15 is better read as applying to recommendations to increase compensation, not to the entire paragraph. Nonetheless, while Paragraph 15 does not explicitly limit the Compliance Director to implementing the Consent Judgment, there is no doubt that the Compliance Director was charged with achieving substantial compliance with the Consent Judgment. It is not clear how, in practice, the authority to terminate, transfer, and evaluate employees extends to areas that may be beyond implementing the Consent Judgment. And here, there is no indication that in this case, Sutherland's employment, supervision, and transfer were within the purview of implementing the Consent Judgment. Nor is there any suggestion that the <u>Jones</u> court authorized the Compliance Director to undertake his court-ordered authority without regard to Title VII or other laws governing employment.

Additionally, the Stipulated Order requires the Compliance Director to seek the advice and/or approval of the Sheriff. Thus, even if the Compliance Director had authority to make the final decisions regarding employment matters as to Sutherland, it remains possible that the Sheriff might also have had such authority as a joint employer with the Compliance Director.

Given Sutherland's position and the circumstances surrounding his alleged gender discrimination complaints and transfer, the court cannot conclude without some factual development that the Sheriff lost the authority over employment decisions related to Sutherland as a result of the appointment of the Compliance Director. Were decisions made by the Sheriff or the Compliance Director? Did they consult with one another? Did one obtain consent of the other? If

neither was involved, in what chain of command were employment matters concerning Sutherland handled? The court finds Sutherland's allegation that he was an employee of OPSO sufficient at this stage to state a claim against the Sheriff under Title VII. Accordingly, as to the defendants' argument that the Sheriff cannot be held liable in his official capacity under Title VII due to the appointment of the Compliance Director, the Motion to Dismiss must be denied.

## Conclusion

For the foregoing reasons, defendants' Motion to Dismiss is GRANTED as to:

- All claims against OPSO.
- All claims against Staes, Colvin, and Taylor.
- Sutherland's claims under 42 U.S.C. §1981.
- Any complaints of race discrimination or retaliation for race discrimination under Title VII.

The foregoing claims are hereby dismissed with prejudice. As to Sutherland's Title VII claims for retaliation and gender discrimination, the Motion to Dismiss is DENIED.

New Orleans, Louisiana, this 11th day of March, 2020.

*Janis van Meerveld*
Janis van Meerveld
United States Magistrate Judge